## Ralph H. WILLIAMS, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (HAHNEMANN UNIVERSITY HOSPITAL), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 8, 2003.
Decided Oct. 23, 2003.

---

Richard A. Jaffe, Philadelphia, for petitioner.

Daniel V. DiLoretto, Philadelphia, for respondent.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Ralph H. Williams (Claimant) petitions for review of that portion of the February 13, 2003, order of the Workers' Compensation Appeal Board (WCAB), which reversed the decision of the workers' compensation judge (WCJ) to grant Claimant's reinstatement petition. We affirm.

On February 24, 1987, Claimant sustained a work-related back injury, and Hahnemann University Hospital (Employer) paid workers' compensation benefits pursuant to a notice of compensation payable. (WCJ's Findings of Fact, No. 1.) By decision circulated December 23, 1991, WCJ[1] Scott Olin modified Claimant's benefits from total to partial as of February 10, 1989, based on Claimant's failure to apply for an available position as an instructor with C.H.I. Institute in good faith.[2] (Supp. R.R. at 11b, 13b.)

Subsequently, Claimant filed a petition for reinstatement of total disability benefits, and Employer filed a termination petition; these petitions were consolidated for hearing. By decision circulated May 8, 1995, WCJ Olin dismissed Claimant's reinstatement petition, concluding that Claimant did not establish a worsening of his physical condition and that Claimant's continued loss of earnings was self-imposed.[3] (Supp. R.R. at 73b, 74b.) WCJ Olin also dismissed Employer's termination petition. (Supp. R.R. at 76b.)

On September 10, 1998, Claimant's five hundred week period of partial disability benefits expired. (WCJ's 5/26/00 decision, Findings of Fact, No. 4.) On or about October 13, 1998, Claimant filed a second petition for reinstatement, alleging a worsening of his condition and an injury causing him decreased earning power as of May 9, 1995.[4] (WCJ's 5/26/00 decision, Findings of Fact, Nos. 4, 5.) Subsequently, Employer filed a second termination petition. The reinstatement and termination petitions were consolidated for hearing before WCJ Thomas Devlin.

In support of his reinstatement petition, Claimant presented the April 12, 2001, deposition testimony of Parviz Kambin, M.D. Dr. Kambin initially treated Claimant in October 1987 and did not treat Claimant again until January 1997. (WCJ's Findings of Fact, Nos. 13, 14.) At his initial examination, Dr. Kambin diagnosed Claimant as suffering from pre-existing degenerative disc disease at L4–5, which was aggravated and became symptomatic, causing pain and numbness, as a result of Claimant's work injury. (WCJ's Findings of Fact, No. 13.) Dr. Kambin testified that, as of January 1997, Claimant's diagnosis was similar to the initial examination, but that Claimant's condition had worsened because Claimant now had neurological deficits that were not present in 1987. (WCJ's Findings of Fact, No. 14.)

1. We recognize that, prior to the 1993 amendments to the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, effective August 31, 1993, workers' compensation judges were called referees.

2. A final decision in the matter was issued in *Williams v. Workmen's Compensation Appeal Board (Hahnemann University)*, (Pa.Cmwlth., No. 1408 C.D. 1996, filed December 6, 1996), and this court upheld the modification of Claimant's benefits.

3. On appeal, the WCAB affirmed, and, on further appeal, this court affirmed the WCAB. *Williams v. Workers' Compensation Appeal Board (Hahnemann University)*, (Pa.Cmwlth., No. 1325 C.D. 1997, filed December 5, 1997).

4. By decision circulated May 26, 2000, WCJ Thomas Devlin dismissed Claimant's reinstatement petition as being untimely filed. Claimant appealed, and by order dated September 24, 2000, the WCAB remanded the matter, pursuant to a Stipulation of the Parties, for a hearing on the merits.

Dr. Kambin also testified regarding Claimant's treatment since 1997. (WCJ's Findings of Fact, Nos. 15, 16.)

With respect to Claimant's physical capabilities, Dr. Kambin opined that Claimant has been unable to return to his pre-injury employment since 1987. (WCJ's Findings of Fact, No. 16.) Dr. Kambin further opined that, as of June 1999, Claimant had the following restrictions: Claimant was restricted to lifting less than ten pounds occasionally; Claimant's ability to stand/walk, as well as sit, during an eight-hour day is less than two hours each; Claimant must be able to change positions frequently; and Claimant would need to lie down at unpredictable intervals during a work shift. (WCJ's Findings of Fact, No. 17.) On cross-examination, Dr. Kambin admitted that he disagreed with WCJ's Olin's finding in his 1991 decision that Claimant was able to return to sedentary work. (Dr. Kambin's dep. at 44.) Dr. Kambin further admitted that he did not believe Claimant could perform any type of gainful employment from the time he saw Claimant in 1987 through his last examination in June 1999. (Dr. Kambin's dep. at 44, 45.) WCJ Devlin found Dr. Kambin's testimony to be credible. (WCJ's Findings of Fact, No. 18.)

Claimant also presented the August 2, 2001, deposition testimony of Gary Young, a certified vocational counselor, who met with Claimant on November 2, 2000, to perform a vocational assessment. (WCJ's Findings of Fact, Nos. 19, 20.) Young had reviewed Claimant's medical records as well as the findings of several independent medical examinations. (WCJ's Findings of Fact, No. 20.) Young testified that Claimant was 62 years old and that he was considered a person of advanced age, which affects one's ability to work, both in previous occupations as well as learning alternative occupations.[5] (WCJ's Findings of Fact, No. 21; Young's dep. at 14.) Young further testified that, because Claimant had a ninth grade education and no GED, Claimant is considered to be of "limited education"; however, based on tests Young administered to Claimant, Claimant's current academic functioning level is more consistent with a "marginal education" category. (WCJ's Findings of Fact, No. 21; Young's dep. at 15, 16.) Young explained that this classification would further diminish Claimant's ability to perform simple or even entry level work. (WCJ's Findings of Fact, No. 21; Young's dep. at 17.) Young also testified that Claimant graded in the lowest one percentile on a manual dexterity text, and Claimant was not capable of performing even simple small parts assembly. (WCJ's Findings of Fact, No. 21; Young's dep. at 17.)

Young then described the Transferable Skills Analysis he performed on Claimant. Explaining the results of the analysis, Young stated that Claimant had three main limiting factors, age, lack of a high school education and physical impairments. (WCJ's Findings of Fact, No. 23.) Based on Claimant's vocational assessment and utilizing the medical restrictions placed upon Claimant by John R. Duda, M.D., in Judge's Olin's 1991 decision, Young opined that Claimant was underqualified for a variety of positions, including office helper, housekeeping cleaner, telephone solicitor, and sales clerk. (WCJ's Findings of Fact, No. 24; Young's dep. at 25–27.)

Young also reviewed Dr. Kambin's deposition testimony, specifically, the restrictions Dr. Kambin placed upon Claimant. Based upon those restrictions, as ·well as

5. Young explained that the older a person is, the more difficult it is for him or her to adapt to new work settings. (WCJ's Findings of Fact, No. 21.)

the other information regarding Claimant's vocational background, educational background and age, Young opined that Claimant was not capable of returning to his pre-injury employment, and, in fact, Claimant could not perform any work. (WCJ's Findings of Fact, No. 25; Young's dep. at 27–30.) In addition, Young opined that Claimant was not vocationally capable of performing the instructor position at C.H.I. Institute that was made available to Claimant in 1989, because Claimant did not demonstrate any ability as an instructor or the ability to direct, control and plan the activities of others. (Young's dep. at 22, 23.) Young further explained that generally a high school diploma would be necessary for that position, and Claimant did not have one. (WCJ's Findings of Fact, No. 23; Young's dep. at 22–23, 29–30.) On cross-examination, Young admitted that, notwithstanding WCJ Olin's 1991 decision, Young believed Claimant was totally disabled from a vocational standpoint.[6] WCJ Devlin found Young's testimony to be credible.[7] (WCJ's Findings of Fact, No. 26.)

Following the presentation of all evidence, WCJ Devlin granted Claimant's reinstatement petition and denied Employer's termination petition. Employer appealed to the WCAB, which reversed the WCJ's grant of Claimant's reinstatement petition and affirmed the denial of Employer's termination petition.[8] With respect to Claimant's reinstatement petition, the WCAB concluded that the opinions of Dr. Kambin and Young were incompetent because they were based upon facts contrary to WCJ Olin's 1991 decision; specifically, Dr. Kambin and Young opined that Claimant could never have performed the instructor position offered to him in 1989.

Claimant now petitions this court for review of that portion of the WCAB's order which reversed WCJ Devlin's grant of Claimant's reinstatement petition.[9] Claimant argues that neither Dr. Kambin's testimony nor Young's testimony was based

6. The following exchange took place on cross-examination:

Q. So apparently, you disagreed with Judge Olin's decision in terms of [Claimant's] being employable; is that correct?
. . .
A. Well, I don't know if I'm in a position to disagree with a Judge. I'll say that if I add my additional vocational evaluation, that I have a difference of opinion with Judge Olin. I don't think that my opinion carries any weight with Judge Olin. And I'm not trying to avoid it, but I don't think that that's my area of expertise. I'm giving an opinion based on my evaluation of [Claimant's] level of function.
Q. Well, you had testified, I believe, that, in your opinion, in your professional opinion, [Claimant] could not perform the job that Judge Olin said and found in his decision that he could perform; is that correct?
A. Correct.
. . .

Q. And going back to Judge Olin's decision, it would be your opinion that, notwithstanding what Judge Olin found in his decision, in your opinion, [Claimant] was totally disabled from a vocational standpoint?
. . .
A. Yes.
(Young's dep. at 32–33, 42.)

7. Claimant also testified on his own behalf and presented the September 26, 2001, deposition testimony of Dr. Duda. However, this testimony is not relevant to the issue before us.

8. The termination petition is not at issue here.

9. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

upon assumptions that were contrary to the established facts of record, and, therefore, the opinions are competent. We disagree.

In *Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries)*, 562 Pa. 411, 756 A.2d 661 (2000), our supreme court set forth a claimant's burden in seeking reinstatement of total disability benefits after exhausting his or her entitlement to partial disability, i.e., a "post–500–week" claimant. Our supreme court stated that such a situation "is a hybrid between modification of existing benefits and reinstatement of terminated benefits." *Id.* at 425, 756 A.2d at 668, n. 11. Generally, a "post–500–week" claimant must establish that: (1) he has no ability to generate earnings (or a "zero earning capacity"), since partial disability benefits are no longer available to that claimant; and (2) that his medical condition has gotten worse. *Id.* at 425, 756 A.2d at 668. More specifically, with respect to a claimant who, as here,

> has not engaged in the light-duty work which was found to be available and consistent with his physical limitations in connection with the award of compensation for partial disability, his burden will be greater. First, depending upon the circumstances, the claim may be vulnerable to denial on the basis of voluntarily retirement. Second, the claimant will not be afforded the benefit of the presumption of total disability from an inability to perform an existing light-duty job. Rather, the claimant is in the position of having to prove a negative (i.e., that there are no jobs available in which he could work consistent with his physical limitations). In this setting, medical testimony which concedes that a claimant retains the physical ability to accom-

> plish light-duty work, with *no* vocational or other form of assessment as to why such work is not available, will be deemed fatal to the claim.

*Id.* at 426, 756 A.2d at 669 (citations omitted). Additionally, in *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 149 Pa.Cmwlth.362, 614 A.2d 779 (1992), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993), this court held that where, as here, a suspension of benefits is based on a finding that the claimant has failed to pursue a job in good faith, in a reinstatement petition proceeding, the "claimant must prove a change in his condition such that he can *no longer* perform the job(s) offered to him which served as the basis for the earlier suspension." *Id.* at 780 (emphasis added).

Here, contrary to the finding in WCJ Olin's 1991 decision, Dr. Kambin indicated his belief that Claimant could have never performed the instructor position at C.H.I. Institute. Indeed, Dr. Kambin testified that Claimant could not perform any type of gainful employment *at that time.* It is well-settled that where an expert's opinion is based upon an assumption which is contrary to the established facts of record, that opinion is worthless. *Noverati v. Workmen's Compensation Appeal Board (Newtown Squire Inn)*, 686 A.2d 455 (Pa. Cmwlth.1996). Consequently, because Dr. Kambin's opinion is contrary to facts as found by WCJ Olin, it is not competent to support the requisite finding that Claimant could *no longer* perform the instructor position at C.H.I. Institute.

Similarly, reviewing Young's testimony as a whole, it is clear that he believed that Claimant could not currently perform the instructor position at C.H.I. Institute.[10] However, it also is evident that Young believed that Claimant could not perform

---

10. Although Dr. Kambin did not believe Claimant could perform any type of employ- ment, he did set forth physical limitations for Claimant. Therefore, it was incumbent upon

that position *at the time it originally was offered to him;* indeed, Young stated that Claimant would not have been able to perform that job because he lacked a high school degree or GED. This contradicts the finding in WCJ Olin's 1991 decision that Claimant could perform the instructor position *at that time.* Because Young's opinion also is contrary to facts as found by WCJ Olin, it too is incompetent. *See Noverati.*

Accordingly, for the foregoing reasons, Claimant cannot satisfy his burden under the reinstatement petition. *See Stanek, Spinabelli.* Therefore, we affirm the WCAB's order.

### ORDER

AND NOW, this 23rd day of October, 2003, the order of Workers' Compensation Appeal Board, dated February 13, 2003, is hereby affirmed.

Claimant to establish that there are *no* jobs within those physical limitations. *See Stanek.* Moreover, because Claimant previously had refused the light duty instructor position at C.H.I. Institute, he necessarily had to establish that he could no longer perform that position. *See id.*